1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

7

DAVID W. BEASLEY,

8
                                        Plaintiff,
9
          v.
10
CAROLYN W. COLVIN, Acting
Commissioner of Social Security,
11
12
                                        Defendant.

Case No. 3:15-cv-05322-KLS

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

13

14          Plaintiff has brought this matter for judicial review of the defendant

15   Commissioner's denial of his applications for disability insurance benefits ("DIB") and

16   supplemental security income ("SSI").  Pursuant to 28 U.S.C. § 636(c), Federal Rule of

17   Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this

18   matter heard by the undersigned Magistrate Judge.  After reviewing the parties' briefs

19   and the remaining record, the Court hereby finds that for the reasons set forth below, the

20   Commissioner's decision to deny benefits is reversed and that this matter should be

21   remanded for further administrative proceedings.

22

23                          FACTUAL AND PROCEDURAL HISTORY

24          On September 19, 2011, plaintiff protectively filed applications for DIB and SSI,

25   alleging disability as of January 1, 2002, due to back injury, shoulder problems,

26   insomnia, arthritis, Hepatitis C, and Hepatitis B. See Administrative Record ("AR") 98,
ORDER - 1

107.   His application were denied upon initial administrative review and on

reconsideration. See AR 105, 114, 133, 150.  A hearing was held before an administrative

law judge ("ALJ") on October 9, 2013, at which plaintiff, represented by counsel,

appeared and testified, as did a vocational expert. See AR 34-95.  At the hearing, plaintiff

amended his alleged onset date to November 1, 2011. AR 13, 39.

On November 4, 2013, the ALJ issued a decision in which plaintiff was

determined to be not disabled. See AR 13-26.  Plaintiff's request for review of the ALJ's

decision was denied by the Appeals Council on April 10, 2015, making the ALJ's

decision the Commissioner's final decision. See AR 1-8; see also 20 C.F.R. § 404.981, §

416.1481. On May 15, 2015, plaintiff filed a complaint in this Court seeking judicial

review of the ALJ's decision. See ECF #3.  The administrative record was filed with the

Court on July 28, 2015. See ECF #10.  The parties have completed their briefing, and

thus this matter is now ripe for judicial review and a decision by the Court.

Plaintiff argues the ALJ's decision should be reversed and remanded to defendant

for award of benefits, or in the alternative additional proceedings, because the ALJ erred

by: (1) failing to provide legally adequate reasons for rejecting the medical opinions of

treating physician Mark Wentworth, M.D. and treating psychiatrist T. Lincoln Truschel,

M.D.; (2) failing to provide legally adequate reasons for rejecting the medical opinions of

examining medical professional Jennifer Irwin, M.D. and Kimberly Wheeler, Ph.D.; (3)

failing to properly evaluate whether plaintiff met Listings 12.05 or 12.02; (4) assessing an

incomplete residual functional capacity ("RFC") which did not include limitations from

his severe headaches; (5) rejecting the lay witness evidence in the record; and (6) failing

ORDER - 2

1   to address depressive disorder, pain disorder, and personality disorder with antisocial

2   traits as severe impairments. Dkt. 12 at 1. The Court agrees the ALJ erred in evaluating

3   the evidence from Drs. Wentworth and Irwin and in assessing plaintiff's RFC. Therefore,

4   the Court agrees the ALJ erred in determining plaintiff to be not disabled and, for the

5   reasons set forth below, finds that the Commissioner's decision should be reversed, and

6   that this matter should be remanded for further administrative proceedings.

7

8                                           DISCUSSION

9           The determination of the Commissioner that a claimant is not disabled must be

10  upheld by the Court, if the "proper legal standards" have been applied and the

11  "substantial evidence in the record as a whole supports" that determination. Hoffman v.

12  Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v. Comm'r of Social

13  Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan, 772 F.Supp. 522,

14  525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless,

15  be set aside if the proper legal standards were not applied in weighing the evidence and

16  making the decision." (citing Brawner v. Sec'y of Health & Human Servs., 839 F.2d 432,

17  433 (9th Cir. 1987))).

18          Substantial evidence is "such relevant evidence as a reasonable mind might accept

19  as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971)

20  (citation omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are

21  upheld if supported by inferences reasonably drawn from the record.").  "The substantial

22  evidence test requires that the reviewing court determine" whether the Commissioner's

23  decision is "supported by more than a scintilla of evidence, although less than a

ORDER - 3

preponderance of the evidence is required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).  "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("'Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.'" (quoting Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971))). [1]

I.      The ALJ's Evaluation of the Medical Evidence in the Record

        The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).  Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion must be upheld." Morgan v. Comm'r of Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

---

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached.  If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them.  It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence.  While the court may not try the case de novo, neither may it abdicate its traditional function of review.  It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational.  If they are . . . they must be upheld.

Sorenson, 514 F.2d at 1119 n.10.

ORDER - 4

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830. An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent

ORDER - 5

evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.  In this case, plaintiff alleges error with respect to the ALJ's evaluation of both treating and examining physician opinions.

*A. Mark Wentworth, M.D.*

Dr. Wentworth is plaintiff's treating physician for his physical impairments. Dr. Wentworth first saw plaintiff on September 24, 2010 and began providing regular treatment on November 2, 2011. AR 983. On September 19, 2013, Dr. Wentworth provided a statement detailing his opinion of plaintiff's condition. AR 983-987.  He described plaintiff's impairments as, "a history of degenerative disk disease and degenerative joint disease with radiculopathy, left greater than right. He also has a more recent history of pain and spasm in his cervical spine with some radicular pain into the right arm to the hand, and has a history of muscle tension headaches." AR 984. Dr. Wentworth summarized findings from neurosurgeon Dr. Iluliano who performed and interpreted lumbar and cervical MRI studies completed August 9, 2013. AR. 951-54, 984. The MRIs showed, "moderate to severe foraminal stenosis bilaterally at C5-6, left greater than right. The lumbar MRI showed disc degeneration at L4-5 along with a disc protrusion which is a little worse on the right side. He has moderate stenosis bilaterally at L4-5." AR 984. Dr. Wentworth described the plan to continue with conservative treatment measures before considering surgery. AR 984. He opined that plaintiff "would not be able to sustain an eight hour a day 40 hour a week work schedule within these limitations without significant absenteeism (2-3 days a month or more) associated with increased pain and limitation in his lumbar and cervical spine." AR 987.

ORDER - 6

Dr. Wentworth also discussed plaintiff's headaches. "[H]e has become quite debilitated by severe headaches." AR 987.  Although the headaches had improved with medication, Dr. Wentworth still believed, "it is probable that from two to five days a month he would be unable to function in a work setting because of these headaches." AR 987.

An ALJ is required to provide specific and legitimate reason supported by substantial evidence in the record to reject an opinion of a treating medical source. See Lester, 81 F.3d at 830-31. Despite Dr. Wentworth's role as treating physician, the ALJ gave his statement little weight because, "it appears to largely be based on the claimant's subjective complaints regarding his impairments. Although the claimant consistently complains of back pain, his allegations are not supported by his performance during physical examinations. It is also not supported by his ability to perform activities of daily living." AR 22.  Plaintiff contends the ALJ's analysis is neither specific nor legitimate because he did not consider the evidence Dr. Wentworth used to form his opinion or identify the inconsistent examinations or the activities. Dkt. 12 at 5. The Court agrees.

"An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant self-reports that have been properly discounted as incredible." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (quoting Morgan v. Comm'r. Soc. Sec. Admin., 169 F.3d 595, 602 (9th Cir. 1999) (citing Fair v. Bowen, 885 F.2d 597, 605 (9th Cir. 1989))). Here, the ALJ found that Dr. Wentworth based his opinion on plaintiff's subjective complaints. AR 22. However, Dr. Wentworth's statement belies this finding, as he specifically notes the MRI results showing moderate to severe foraminal stenosis,

ORDER - 7

lumbar disc degeneration, and disc protrusion. AR 984. Rather than plaintiff's complaints, Dr. Wentworth relied on these objective, clinical findings to support his opinion.

Furthermore, Dr. Wentworth opined that plaintiff's pain complaints are consistent with the severity of the objective medical evidence and expressed belief in plaintiff's general credibility. AR 985. "It is my opinion that [plaintiff] is generally credible when he reports his pain and other symptoms for me for treatment purposes…The physical and other symptoms he reports are consistent with the totality of the medical evidence in his chart, including the recent MRI results and Dr. Iuliano's consultation and treatment recommendations." AR 985. As a result of this opinion, the ALJ's rejection of Dr. Wentworth's statement was erroneous. "[A]n ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations." See Ryan v.Comm'r of Soc. Sec. Admin., 528 F.3d 1194, 1199-1200 (9th Cir. 2008). Here, Dr. Wentworth not only did not discredit plaintiff's complaints, he affirmed belief in their credibility. Therefore, the ALJ's rejection of the opinion as too heavily reliant on plaintiff's self-reports was erroneous.

Finally, plaintiff correctly notes the ALJ failed to specify the inconsistencies between Dr. Wentworth's opinion and plaintiff's performance during physical exams and activities that also led to rejection of the opinion. "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it,

ORDER - 8

asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." Garrison v. Colvin, 759 F.3d 995, 1012-13 (9th Cir. 2014) (citing Nguyen v. Chater, 100 F.3d 1462, 1464 (9th Cir.1996)). Here, the ALJ used general "boilerplate language" finding plaintiff's allegations unsupported by physical examination or ability to perform activities of daily living. The ALJ also fails to cite to any evidence in the record in support of this conclusion. AR 22. This lack of specificity fails to provide substantial evidence to contradict a treating physician opinion supported by objective clinical evidence in the form of MRI results.

*B. Jennifer Irwin, M.D.*

Dr. Irwin conducted a psychiatric examination of plaintiff on June 8, 2012. AR 683-88. She diagnosed posttraumatic stress disorder, severe major depressive disorder, pain disorder and active opioid dependence. AR 686. His affect was restricted and tearful. AR 685. The mental status examination showed significantly impaired recent and past memory. AR 686. He recalled 0/3 objects after five minutes and could not remember his phone number, address, or zip code. AR 686. He followed a three step command, but spelled "world" incorrectly both forward and backward, had difficulty performing serial 7's, and was unaware of his errors. AR 686. He showed impaired abstraction, insight, and judgment. AR 686.

As a result of this examination, Dr. Irwin opined that plaintiff's ability to perform simple and repetitive tasks was unimpaired. AR 687. His ability to accept verbal instruction was moderately impaired as instructions had to be repeated, but plaintiff

ORDER - 9

1    cooperated and gave good effort. AR 687. However, Dr. Irwin assessed plaintiff's ability

2    to perform work activities on a consistent basis without special or additional instructions

3    as moderately to markedly impaired.  His ability to interact with co-workers and the

4    public, complete a normal workday without interruption from his psychiatric condition,

5    and deal with the usual stress of the workplace is markedly impaired. AR 688. The ALJ

6

7    rejected this opinion.

8

9            I give little weight to Dr. Irwin's opinion because the
        claimant demonstrated an attempt to intentionally
10        misrepresent his past to get his drugs of choice. He also
        consistently misrepresented his drug history. Because Dr.
11        Irwin based his [sic] opinion on the claimant's subjective
        complaints and believed them to be truthful, I cannot give his
12        [sic] opinion significant weight. AR 23.

13    Plaintiff contends the ALJ did not properly consider Dr. Irwin's role as examining

14
    physician for the agency and failed to identify any medical evidence conflicting with her
15
    opinion. Dkt. 12 at 9.
16

17        As noted above, an ALJ properly rejects a medical opinion based "to a large
18
    extent" on plaintiff's subjective complaints of dubious credibility. See Tommasetti, 533
19
    F.3d at 1041. However, "when an opinion is not more heavily based on a patient's self-
20
    reports than on clinical observations, there is no evidentiary basis for rejecting the
21
    opinion." Ghanim v. Colvin, 763 F.3d 1154, 1162 (9th Cir. 2014).  Here, Dr. Irwin based
22
23    her opinion on the objective evidence derived from her observations and the mental status

24    examination. Like the physical examination, the Mental Status Examination is termed the

25    *objective* portion of the patient evaluation." Paula T. Trzepacz and Robert W. Baker, The

26    Psychiatric Mental Status Examination 4 (Oxford University Press 1993) (emphasis in

ORDER - 10

original). Dr. Irwin expressly related information obtained during the mental status exam to her opinion of plaintiff's limitations. For example, she noted his need for repeated instructions, which informed her opinion that he was moderately to markedly impaired in his ability to perform detailed and complex tasks. AR 687. Given this clear reliance on clinical findings to arrive at her assessment, Dr. Irwin's opinion was not substantially based on plaintiff's subjective complaints.

The ALJ also expressed concern about the impact of plaintiff's erroneously reported drug history and drug-seeking behavior on Dr. Irwin's opinion. AR 23. But, Dr. Irwin's report includes acknowledgement of plaintiff's drug issues. She included active opioid dependence in her diagnoses and also noted "[t]here appears to be a physical dependence on opiod [sic] pain medication." AR 686, 687. Given this awareness of plaintiff's drug issues, the ALJ did not have substantial evidence to support the inference that Dr. Irwin formed her opinion based on misinformation provided by plaintiff. Without specific and legitimate reasons supported by substantial evidence, the ALJ erroneously discounted Dr. Irwin's assessment of several marked impairments particularly in social functioning. See Lester, 81 F3d. at 830-31.

*C. Harmful Error*

The ALJ erred by rejecting the opinions of both Dr. Wentworth and Dr. Irwin. However, the Court will not reverse a decision by an ALJ in which the errors are harmless. See Molina v. Astrue, 674 F.3d 1104, 1117-22 (9th Cir. 2012). The Court must first determine whether the ALJ's error was "nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion," and therefore, harmless. Stout v. Comm'r of

ORDER - 11

Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006). Here, the ALJ erroneously

rejected medical opinions as to the severity of plaintiff's mental and physical

impairments, as well as probable attendance issues due to those impairments. When an

ALJ ignores or improperly discounts significant and probative evidence in the record

favorable to a claimant's position, the ALJ "thereby provide[s] an incomplete residual

functional capacity [RFC] determination." Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir.

2012). When the RFC is incomplete, the hypothetical question presented to the

vocational expert is also incomplete, and "the ALJ's reliance on the vocational expert's

answers [is] improper." See id. at 1162. This directly impacts the disability

determination as the ALJ's step four and five conclusions would no longer supported by

substantial evidence. Therefore, the ALJ's rejection of the opinions of Drs. Wentworth

and Irwin was harmful error requiring reversal. See Stout, 454 F.3d at 1055.

II.      The ALJ's Assessment of Plaintiff's Residual Functional Capacity

         The Commissioner employs a five-step "sequential evaluation process" to

determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. §

416.920. If the claimant is found disabled or not disabled at any particular step thereof,

the disability determination is made at that step, and the sequential evaluation process

ends. See id. If a disability determination "cannot be made on the basis of medical

factors alone at step three of that process," the ALJ must identify the claimant's

"functional limitations and restrictions" and assess his or her "remaining capacities for

work-related activities." Social Security Ruling ("SSR") [SSR] 96-8p, 1996 WL 374184

*2. A claimant's residual functional capacity ("RFC") assessment is used at step four to

determine whether he or she can do his or her past relevant work, and at step five to

determine whether he or she can do other work. See id.

Thus, the RFC is what the claimant "can still do despite his or her limitations." Id.

It is the maximum amount of work the claimant is able to perform based on all of the

relevant evidence in the record. See id. However, an inability to work must result from

the claimant's "physical or mental impairment(s)." Id. Thus, the ALJ must consider only

those limitations and restrictions "attributable to medically determinable impairments."

Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's

"symptom-related functional limitations and restrictions can or cannot reasonably be

accepted as consistent with the medical or other evidence." Id. at *7.

The ALJ assessed an RFC limiting plaintiff to light work with some limitations.

AR 18. Plaintiff can occasionally stoop, crawl, and climb ladders, ropes, or scaffolds. AR

18. He can frequently kneel, crouch, and climb ramps and stairs. AR 18. He must avoid

concentrated exposure to vibrations and hazards, and must be allowed to alternate

between sitting and standing hourly to stretch while staying on task. The ALJ also

assessed limitations to account for plaintiff's mental impairments. Plaintiff can perform

simple routine tasks that do not involve manufacturing style production rate. He can

perform jobs learned by demonstrations, rather than by written instructions. He can have

occasional interaction with supervisors and the public, and occasional changes in the

work setting. AR 18. Plaintiff contends the ALJ failed to take his severe headaches into

consideration when determining this RFC. Dkt. 12 at 13-14.

According to Dr. Wentworth, plaintiff's headaches would likely make him unable

to function in a work environment for two to five days per month. AR 987.  The ALJ

discounted this evidence of debilitating headaches due to improvement with medication.

AR 20. At the hearing on October 9, 2013, plaintiff testified that his headaches still

happen constantly but he had gotten "pills that work." AR 68. According to plaintiff,

Dilaudid did not get rid of his headaches. AR 68. With the new medication, his headaches

went away after two hours. AR 69.

        Despite this testimony, Dr. Wentworth's statement from September 19, 2013, less

than one month prior to the ALJ hearing, showed continued belief that plaintiff's

headaches would render him ineffective in the workplace for several days each month.

AR 987. Furthermore, additional evidence submitted to the Appeals Council, and

incorporated into the record, shows plaintiff continued to experience debilitating

headaches after his positive statements during the hearing.[2] Plaintiff saw neurologist

Zhongzeng Li, M.D. on November 25, 2013, after the ALJ decision. AR 993-95.  Dr. Li

reported that plaintiff continued to experience one or two migraines each week. AR 993.

Dr. Li recommended a prescription for prophylactic medication, despite the success with

fioricet with codeine for relief during a migraine. AR 995. In a February 21, 2014 follow-

up appointment with Dr. Li, plaintiff reported that he had experienced negative side

effects and discontinued the prophylactic medication. AR 1035. Due to continued,

frequent headaches, Dr. Li prescribed a different medication for migraine prophylaxis.

---

[2] The Court is required to consider evidence submitted to the Appeals Council and incorporated into the record. See, Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1159-60 (9th Cir. 2012) ("[W]hen a claimant submits evidence for the first time to the Appeals Council, which considers that evidence in denying review of the ALJ's decision, the new evidence is part of the administrative record, which the district court must consider in determining whether [or not] the Commissioner's decision is supported by substantial evidence.").

ORDER - 14

AR 1037.

These medical reports bear out Dr. Wentworth's opinion that plaintiff would continue to experience frequent and severe headaches. Evidence of continued issues despite medication suggests plaintiff's headaches would result in the absenteeism and inability to sustain employment predicted by Dr. Wentworth. The RFC is the "maximum degree to which the individual retains the capacity for *sustained* performance of the physical-mental requirements of jobs." Reddick v. Chater, 157 F.3d 715, 724 (9th Cir. 1998) (emphasis in original). Therefore, the ALJ should revisit the RFC in order to account for any impact on possible work performance stemming from the frequent, severe migraines.

III.   Remand for Further Proceedings

Plaintiff contends the ALJ's failure to properly evaluate the medical evidence means they should be credited as true and benefits should be awarded on remand. Dkt. 12 at 17. Generally, when the Social Security Administration does not determine a claimant's application properly, "'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, the Ninth Circuit has put forth a "test for determining when [improperly rejected] evidence should be credited and an immediate award of benefits directed." Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000) (quoting Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996)).

It is appropriate when:

ORDER - 15

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Harman, 211 F.3d at 1178 (quoting Smolen, 80 F.3d at 1292). After determining the ALJ made a harmful legal error, the Court must "review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and 'all essential factual issues have been resolved.'" Dominguez v. Colvin, No. 13-17380, 2015 WL 8600040, at *3 (9th Cir. 2015) (quoting Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1101 (9th Cir. 2014). Here, the record is not free from outstanding issues that must be resolved. See id.

The ALJ's failure to correctly weigh the various medical opinions resulted in a disability determination that is not supported by substantial evidence. See Hill, 698 F.3d at 1161-62. Additional proceedings are necessary to reconsider the medical evidence and determine the correct RFC. It is the job of the ALJ, not this Court, to consider how plaintiff's impairments affect the formulation of the RFC. Dominguez, 2015 WL 8600040, at *5 12. 20 C.F.R. § 416.927(d)(2).

Additionally, the ALJ found plaintiff lacking in credibility. AR 18-19. Plaintiff has not challenged this finding. Dkt. 12, 1. The record includes significant evidence of dishonesty, including plaintiff's statements on April 5, 2012 and April 30, 2012 --while his benefit applications were pending-- about his need to lie to government officials in order to provide for his family. AR 896, 897. Plaintiff also admitted lying to both his physician and his fiancée about his marijuana use. AR. 49, 331-32. Given this history of

ORDER - 16

dishonesty, "the record as a whole creates serious doubt that [plaintiff] is, in fact, disabled." <u>Garrison v. Colvin</u>, 759 F.3d 995, 1021 (9th Cir. 2014).  Remand for further proceedings is the appropriate remedy.

<u>CONCLUSION</u>

Based on the foregoing discussion, the Court hereby finds the ALJ improperly concluded plaintiff was not disabled.  Accordingly, defendant's decision is REVERSED and this matter is REMANDED for further administrative proceedings in accordance with the findings contained herein.

DATED this 3rd day of March, 2016.

Karen L. Strombom
United States Magistrate Judge

ORDER - 17